# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

_____
                                        :
THOMAS BRIKSZA,                         :      Civil No. 08-cv-01785
                                        :
            Plaintiff,                  :
                                        :
        v.                              :          **OPINION**
                                        :
DAN MOLONEY; LIFFEY VAN LINES AND       :
STORAGE, INC.; NEW YORK STORAGE, INC.;  :
JOHN DOES 1-12                          :
            Defendants.                 :
_____ :


**WOLFSON, United States District Court Judge:**

　　　Presently before the Court is a motion by Defendants, Dan Moloney, as an individual and

owner/operator of New York Storage, Inc., Liffey Van Lines and Storage, Inc., and New York

Storage, Inc. (collectively, "Defendants"), to dismiss pro se Plaintiff's, Thomas Briksza,

("Plaintiff" or "Briksza"), Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants also

move for sanctions against Briksza under Fed. R. Civ. P. 11. In his Complaint, Plaintiff asserts

numerous state law claims, including extortion, theft, larceny, fraud, negligence, and

racketeering. Plaintiff also alleges that Defendants engaged in a conspiracy against him in

violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §

1961, et seq., by committing fraud stemming from the taking of his property following the

foreclosure of his "place of work" in New York. For the reasons that follow, the Court grants

Defendants' Motion to Dismiss Plaintiff's claims, but the Court does not impose sanctions under

Fed. R. Civ. P. 11.

**I. Background and Procedural History**

       Since Defendants move to dismiss Plaintiff's claims pursuant to <u>Fed. R. Civ. P.</u> 12(b)(6),
the following version of events assumes all factual allegations by Plaintiff to be accepted as true.
For the purpose of deciding this Motion, the Court will refer to Plaintiff's Complaint.  Because
Plaintiff's Complaint does not sufficiently allege the facts upon which his claims are based, the
Court also refers to the facts alleged by Plaintiff in his action in the Supreme Court of New
York, New York County, <u>Briksza v. New York Storage, Inc., Liffey Van Lines and Storage, Dan
Moloney, et. al.</u>, No. 111320/05 (Sup. Ct., N.Y. County 2005), and the disposition thereof.[1]
From Plaintiff's numerous allegations stated in his Complaint, and the public record, the Court
discerns that this instant action arises from Defendant's removal of certain property which
Plaintiff claims to have owned that was located at his former place of employment, Theater
Workshop Entertainment ("Theater").  (Compl. ¶ 1, April 10, 2008).  Plaintiff seeks damages for
the loss of this property.

       On December 16, 2004, Theater entered into a Stipulation of Settlement ("Settlement")
with the Long Island Rail Road Company ("LIRR") arising out of a foreclosure action.  (Ex. B).
Pursuant to the Settlement, Theater was to vacate the premises upon which it was located by
January 31, 2005[2].  <u>Id.</u>   In exchange for Theater's vacating and delivery of the premises,
Theater's past debt to LIRR of $9,656.69 would be waived.  <u>Id.</u> ¶ 7.  Theater also agreed that any

---

[1] In deciding Defendants' Motion to Dismiss pursuant to <u>Fed R. Civ. P.</u> 12(b)(6), the Court may
consider the allegations in the complaint, exhibits attached to the complaint, matters of public
record, and documents that form the basis of Plaintiffs' claim. <u>Lum v. Bank of Am.</u>, 361 F.3d
217, 222 n. 3 (3d Cir. 2004).
[2] Theater's former address was 136 Willis Avenue, Mineola, NY 11501.

property left on the premises after vacating would be deemed abandoned.  Id. ¶ 7.  Plaintiff does not contest the facts of the Settlement.

Allegedly, upon the foreclosure of Theater and pursuant to the Settlement, Defendants were hired to remove the remaining property, which included Plaintiff's alleged property, on or about February 5, 2009.  (Compl. ¶ 3; Ex. B).  Defendants were not informed whether Plaintiff had any legal interest in the property, and Plaintiff made no immediate objections to the property's removal.  Id.

At some point thereafter, Plaintiff attempted to recover his alleged property located at the New York Storage facility from Defendants.  (Compl. ¶ 5; Ex. C).  According to Plaintiff, Defendants asked him to pay $1,500 for their services.  (Compl. ¶ 5).  Plaintiff, however, alleges that Defendants were prepaid for their work in removing the property, and no payment was due from Plaintiff to Defendants.  (Compl. ¶ 3).  Plaintiff alleges that the Theater's landlord was responsible for payment for Defendant's services, and that Plaintiff was not required to pay Defendants.  (Compl. ¶ 1).

Defendants informed Plaintiff of their intent to auction the property, pursuant to the Settlement, which deemed the property in question as abandoned subsequent to January 31, 2005.  (Ex. B).  According to Plaintiff, he signed a contract and agreed to pay a deposit "under duress," because he feared losing his property through an auction.  (Ex. C).  Ultimately, it appears that Plaintiff never secured a return of the property he alleges to have owned.

After a series of improperly served actions, on August 15, 2005, Plaintiff filed a complaint in New York Supreme Court, Nassau County, to recover his property, and to enjoin Defendants from auctioning off that property.  (Ex. C); (P Opp. ¶ 4, Jan. 13, 2009).  The

Honorable Judith J. Gische of the Supreme Court of New York ("Judge Gische") held an evidentiary hearing in response to Plaintiff's action on November 17, 2005.  (Ex. D).  Judge Gische dismissed Plaintiff's claim, because he failed to prove that he owned the subject property.  Id.  Plaintiff appealed this decision to the New York Court of Appeals, but his appeal was denied because proof of ownership could not be established. (Ex. E).

On April 10, 2008, Plaintiff filed the instant complaint, in which he claims Defendants engaged in extortion, larceny, theft, negligence, and fraud, alleging that Defendants continued to unlawfully demand payment from Plaintiff.  (Compl. p. 4).  Additionally, Plaintiff asserts that Defendants have an ongoing scheme to deprive him of his lawful rights.  (Id. ¶ 4).  Plaintiff claims that he does not challenge the validity of the New York decision, but seeks both actual and punitive damages, the return of his property or the alleged replacement cost in the amount of $200,000, and any other relief the Court deems proper.  Id. ¶ 3.  Plaintiff alleges that the Court has diversity jurisdiction over the present action because, in addition to satisfying the amount in controversy requirement, he is a New Jersey resident, and Defendants are New York residents. (Id. ¶ 1).[3]

On July 25, 2008, Defendants filed an Answer, asserting numerous affirmative defenses, including lack of personal and subject matter jurisdiction, and a counterclaim for sanctions under Rule 11, alleging malicious abuse of process.  (Answer p. 3).  On December 12, 2008, Defendants filed this motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) because Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel, and asserting that the court should impose sanctions against Plaintiff.  (Def.'s Motion Dismiss, Dec. 12, 2008).

---

[3] The Court has subject matter jurisdiction over the federal RICO action pursuant to 28 U.S.C. § 1331. See Part. II. A., infra.

In opposition to Defendant's Motion, Plaintiff filed an affidavit.[4]  For the following reasons, the Court grants Defendants' Motion to dismiss, and denies Defendants' request for Rule 11 sanctions.

## II. Discussion

### A. Jurisdictional Issues

#### 1. Rooker-Feldman Doctrine as Basis for Dismissal

Although Defendants do not move to dismiss the Complaint pursuant to the Rooker-Feldman Doctrine, the Court raises this issue sua sponte.  "Under the Rooker-Feldman doctrine, a district court . . . lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling."  Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir. 2006).  This doctrine is a narrow one, and "applies only to cases brought by 1) state-court losers 2) complaining of injuries caused by state-court judgments 3) rendered before the district court proceedings commenced and 4) inviting district court review and rejection of those judgments."  Id.

More simply stated, Rooker-Feldman bars a federal proceeding when "entertaining the federal court claim would be the equivalent of an appellate review" of the state judgment.  Allah v. Whitman No. 02-4247, 2005 WL 2009904, at *4 (D.N.J. Aug. 17, 2005) (quoting FOCUS v. Alleghany County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir.1996)).  Thus, a cause of

---

[4] The Court notes that Plaintiff's affidavit contains both facts and legal arguments, in violation of L. Civ. R. 7.2(a). However, in light of Plaintiff's pro se status, the Court will construe his affidavit as a Brief in Opposition to Defendant's Motion to Dismiss.

action asserted in federal court that ultimately seeks to vacate the decision or reasoning of a state court is barred under Rooker-Feldman.  Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419-20 (3d Cir. 2001) (Rooker-Feldman bars those claims that "[are] inextricably intertwined with [the] state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong.").

Although Plaintiff claims that he is not challenging the New York State Court decision, in actuality, Plaintiff is doing exactly that.  First, Plaintiff lost in the New York State Courts. Here, Plaintiff complains of injuries that were caused by the dismissal of his state court case, including the loss of any claim over the property or any claim for damages against Defendants. The adjudication of the New York State Court proceeding was prior to the filing of this action. Finally, in order for Plaintiff to succeed on any of his claims, the Court would have to find that Plaintiff did own the property in question, essentially reviewing and rejecting the state court's judgment.  Given that Plaintiff's present claims are "inextricably intertwined" with the previously litigated state case, this Court does not have subject matter jurisdiction over Plaintiff's claims under the Rooker-Feldman doctrine.

## 2. Subject Matter Jurisdiction

Despite the above finding, because Plaintiff adamantly protests that he is not attempting to challenge the New York State Court judgment, to the effect that Plaintiff's pleadings could be construed as alleging injuries separate from the New York state court judgment, and therefore not barred by the Rooker-Feldman doctrine, the Court will consider its power to hear Plaintiff's claims and dismiss them on the merits.

Generally, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction. Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Should factual issues arise regarding subject matter jurisdiction, a court may consider exhibits outside the pleadings. Id. Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.

However, the Court is obligated to construe pro se pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2004). Additionally, the Court will apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name. Dluhos, 321 F.3d at 369. Given this broad construction, the Court notes that Plaintiff, especially in his Opposition, alleges Defendants have engaged in an ongoing fraudulent scheme to harm Plaintiff for their financial gain. Given Plaintiff's contentions, the only cause of action that Plaintiff may be attempting to plead is that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et. seq. If that were so, the Court would have subject matter jurisdiction pursuant to 28 U.S.C. § 1331. In his Complaint, Plaintiff also alleges Defendants violated a number of state laws also arising from the taking of his property. Since these claims arise from the same case or controversy as his alleged RICO claim, the Court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.[5]

---

[5] Because the Court finds it has federal question jurisdiction, the Court need not address whether the Court has diversity jurisdiction in this case.

### 3. Personal Jurisdiction

The requirement of personal jurisdiction over a defendant can be waived by the defendant, thereby consenting to the Court's jurisdiction.  Bel-Ray Co. v. Chemrite Ltd., 181 F.3d 43, 443 (3d Cir. 1999).  "In particular, where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter."  Id. (citations omitted).

In this case, Defendants seek affirmative relief from this Court by moving to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6); they also request sanctions against Plaintiff pursuant to Rule 11.  Although Defendants raised personal jurisdiction as an affirmative defense in their Answer, they did not move to dismiss under to Rule 12(b)(2).  Rule 12(h)(1)(a) states that "a party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2).  Fed. R. Civ. P. 12(h)(1)(a).  Rule 12(g)(2) states "that a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Id. at 12(g)(2).  Since the defense of lack of personal jurisdiction was available to Defendants, the failure to move on this defense in its first motion signifies a waiver.  Therefore, pursuant to Rule 12(h)(1)(a), the Court finds Defendants have waived personal jurisdiction as a defense and consented to the Court's jurisdiction here.

### B. Plaintiff Fails to State a Claim by Which Relief Can be Granted

Defendants move to dismiss Plaintiff's Complaint pursuant to 12(b)(6) arguing that Plaintiff's claims are barred by res judicata and collateral estoppel.  Plaintiff argues that his claims are not barred because 1) he alleges claims that were not before the New York State Court, and 2) Defendants engaged in an ongoing fraudulent scheme subsequent to the disposition of Plaintiff's prior claim.  (Pl. Opp. ¶ 16-20).  Defendants also ask the Court to sanction Plaintiff for his repeated filings of frivolous lawsuits.  (Def. Motion Dismiss p. 12).  The Court will address each argument in turn.

### 1. Standard of Review

When reviewing a motion to dismiss on the pleadings, the Court shall "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. at 1968 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  Id. at 1965.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of the necessary element." <u>Phillips</u>, 515 F.3d at 234 (quoting

<u>Twombly</u>, 127 S.Ct. at 1965).

### 2. Res Judicata and Collateral Estoppel Issues

Defendants argue that Plaintiff's claims here are barred by <u>res judicata</u> and <u>collateral</u>

<u>estoppel</u>, because Plaintiff previously asserted a replevin claim in New York State Court, arising

out of the same transaction and factual allegations.  Apparently recognizing the impediments to

challenging the holdings of the New York state actions, Plaintiff asserts he is not challenging the

validity of the state court judgment in this case.  (Pl. Opp. ¶ 3).[6]  Instead, Plaintiff, in an

incoherent and conclusory manner, argues that his claims are not barred because he asserts issues

that have not been raised in the previous lawsuit.  Further, Plaintiff argues his claims are not

barred because they persist beyond the state court action without identifying what post – New

York state actions have been taken by Defendants.  Based on Plaintiff's pleadings and the record

before the Court, only Plaintiff's RICO claim can be construed as extending beyond the state

court's action because Plaintiff alleges a scheme that is ongoing and subsequent to the state

court's disposition of his claim. (Pl. Opp. ¶ 19).  The Court addresses Plaintiff's RICO claims

herein. <u>See</u> Part II. B. 3., <u>infra</u>.  The Court now addresses Plaintiff's argument that he has

additional issues that he did not raise in the prior case.

The doctrine of <u>res judicata</u> is an affirmative defense to avoid piecemeal litigation of

claims arising from the same events.  <u>See</u> <u>Bd. of Trustees of N. Jersey Welfare Fund., v. Centra</u>,

983 F.2d 495, 504 (3d Cir. 1992).  Such a defense provides grounds to grant a motion to dismiss

for failure to state a claim pursuant to <u>Fed. R. Civ. P.</u> 12(b)(6).  "<u>Res judicata</u> encompasses two

---

[6] Despite Plaintiff's assertion that he is not challenging the validity of the state court judgment, in fact this is what Plaintiff is doing. <u>See</u> Part II. A., <u>infra</u>.

preclusion concepts -- issue preclusion, which forecloses litigation of a litigated and decided matter (often referred to as direct or <u>collateral estoppel</u>), and claim preclusion [or <u>res judicata</u>], which disallows litigation of a matter that has never been litigated but which should have been presented in an earlier suit." <u>Bierley v. Dombrowski</u>, 2009 U.S.App. LEXIS 2446 at 6, (3d Cir. Feb. 3, 2009).

   <u>Res judicata</u> applies not only to claims brought in a previous lawsuit, but also to claims that could have been brought in that suit.  Under federal law, the doctrine attaches if there has been (1) a final judgment on the merits in a previous lawsuit involving (2) the same parties or their privies and (3) a subsequent action based on the same cause of action.  <u>Mullarkey v. Tamboer</u>, 536 F.3d 215, 225 (3d Cir.2008) (citations omitted).  If a <u>res judicata</u> "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  <u>Rycoline Prods. v. C & W Unlimited</u>, 109 F.3d 883, 886 (3d Cir. 1997).  Under the Full Faith and Credit Act, 28 U.S.C. § 1738, in the interests of comity, "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give."  <u>Peduto v. North Wildwood</u>, 878 F.2d 725, 728 (3d Cir., 1989) (citations omitted).  The Third Circuit has held that under New York law, <u>res judicata</u> is governed by the transactional approach.  <u>Econophone Hellas S.A., Inc. v. Quintum Techs.</u>, 2005 U.S. Dist. LEXIS 30197 (D.N.J. Nov. 30, 2005).

   In New York, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  <u>Id.</u>  If the claim is based on the same incidents that served as the basis for the earlier litigation, <u>res judicata</u> bars any claim from being predicated on the same incidents.  <u>Id.</u>  Furthermore, "when alternative theories are available to recover what is

essentially the same relief for harm arising out of the same . . . factual grouping . . . the circumstances that the theories will involve materially different elements of proof will not justify presenting the claim by two different actions."  Id.

Plaintiff alleges extortion, theft, larceny, fraud, negligence, and "unlawful activities," which all arise from the removal of his property from Theater by Defendants.  Thus, Plaintiff's state law claims are all based on the same transaction Plaintiff litigated in the New York State Courts.  In that case, Judge Gische ruled in favor of Defendants because Plaintiff could not prove he owned the property in question.  (Ex. D).  In addition, Plaintiff exercised his right to appeal, albeit unsuccessfully, that decision to the New York Court of Appeals.  (Ex. E).  Therefore, because Plaintiff's claims here all arise from the same transaction or factual allegations as his previously litigated case, Plaintiff's claims are barred by res judicata.

Moreover, Plaintiff's claims are barred by the Third Circuit's approach to res judicata because there has already been a 1) final judgment on the merits in a previous lawsuit (2) involving the same parties, and this 3) subsequent claim is based on the same cause of action, the alleged taking of his property.

Plaintiff mistakenly argues that since he never raised the "same issues for disposition by the State Court that are being raised in this matter," his claims are not barred.  (Pl. Aff. ¶ 20). Plaintiff already had his opportunity to assert any and all claims against Defendant arising from this "factual grouping" or transaction.  Therefore, the fact that Plaintiff filed this action in a federal court, a different state, or under a different theory, does not remove the protections afforded by res judicata.  See Echnophone, U.S. Dist. LEXIS 30197.  Accordingly, all of

Plaintiff's state law claims, arising from the alleged taking of his property, are barred by New York and federal <u>res judicata</u> doctrines.[7]

### 3. Plaintiff's RICO Claims

Plaintiff argues that Defendants continued in their scheme to deprive him of his "lawful rights for Defendant's financial gain" subsequent to the dismissal of his New York state action. (Pl. Opp. ¶ 16).  Construing Plaintiff's claim liberally, it appears Plaintiff is attempting to assert that Defendants engaged in fraud, theft, and extortion in violation of RICO.  RICO "provides for liability in civil suits brought by any person injured 'in his business or property' by a RICO violation, mak[ing] it unlawful for 'any person' who is employed by or associated with 'any enterprise' affecting interstate commerce to 'participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." <u>Genty v. Resolution Trust Corp.,</u> 937 F.2d 899, 906 (3d Cir. 1991) (citations omitted).  A RICO claim requires proof of four elements:

> (1) the existence of an enterprise affecting interstate commerce; (2) that Defendants were employed by or associated with the enterprise; (3) that the Defendants participated, directly or indirectly, in the conduct or affairs of the enterprise; and (4) that the Defendants participated through a pattern of racketeering activity that must include the allegation of at least two (2) racketeering acts.

<u>Zellner v. Monroe County Mun. Waste Mgmt. Auth.</u>, No. 07-1976, 2008 U.S. Dist. LEXIS 57769, at *19-20 (M.D. Pa. July 28, 2008) (citation omitted).

### a. Generalized Allegations by Plaintiff

---

[7] Since the Court dismisses Plaintiff's claims under the broad doctrine of <u>res judicata</u>, the Court need not address Defendant's argument that Plaintiff's claims are barred by <u>collateral estoppel</u>.

As to the fourth element of a RICO claim, a plaintiff must articulate a pattern of racketeering activity, i.e., predicate acts.[8]  See Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc., 87 Fed. Appx. 227, 231 (3d Cir. 2003) (citations omitted).  The claim "must include the allegation of at least two (2) racketeering acts."  Zellner, 2008 U.S. Dist. LEXIS 57769, at *20.  When fraud is the predicate act, a plaintiff must satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002).  Specifically, Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007), the Third Circuit qualified what information must be alleged to satisfy the heightened pleading standard of Rule 9(b):

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged."  Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004).  To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.  See Id. at 224.

Frederico, 507 F.3d at 200; See also Seville Indus. Mach. Corp., 742 F.2d at 791.

General allegations, such as fraud and theft, will not satisfy the pleading standard as they are "not included as [specifically listed] racketeering activit[ies] pursuant to 18 U.S.C. §

---

[8] "To set out a prima facie showing of a civil RICO violation under 18 U.S.C. § 1964©, a plaintiff must have been injured by 'racketeering activity,' 18 U.S.C. § 1962(c)-(d). 'Racketeering activity' is defined as a violation of certain enumerated statutes - commonly known as 'predicate acts' - in 18 U.S.C. § 1961(1)."  Breslin v. Brainard, 128 Fed. Appx. 237, 240 (3d Cir. 2005); See also Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005) ("The term 'racketeering activity' is defined in 18 U.S.C. § 1961(1) to include a long list of state and federal crimes, among them the wire fraud alleged here."); See generally 18 U.S.C. §§ 1341, 1343.  The Third Circuit permits federal common law or "garden variety" fraud, including mail and wire fraud.  Tabas v. Tabas, 47 F.3d 1280, 1290 (3d Cir.), cert. denied, 515 U.S. 1118 (1995).

1961(1)."  Marangos v. Swett, No. 07-5937, 2008 WL 4508542, at *8 n. 7 (D.N.J. Sept. 29,

2008) (citing Zellner., 2008 U.S. Dist. LEXIS 57769 at *23).  Examples of predicate acts include

"state felonies punishable by imprisonment of more than a year such as murder, kidnapping,

gambling or extortion, as well as more than thirty federal crimes, such as drug offenses,

obstruction of justice, obscenity, and mail, wire, bankruptcy, and securities fraud."  Genty, 937

F.2d at 907; See also 18 U.S.C. § 1961(1).  In Zellner, the court found that general allegations of

fraud and theft should be dismissed as potential predicate acts because the statute "lists specific

acts, such as mail fraud and wire fraud" as racketeering activity and does not list general fraud.

2008 U.S. Dist. LEXIS 57769 at *23.  Similarly, in this case, Plaintiff's blanket allegations that

Defendants engaged in fraud and theft are not sufficient predicate acts under RICO.  Thus,

Plaintiff's general allegations of fraud and theft are dismissed.

### b. Mail and Wire Fraud Allegations

In his Complaint, Plaintiff generally alleges that Defendants' on-going illegal activities

"use[d] the Federal Mail System and interstate telephone lines."  (Compl. p. 2).  "Where acts of

mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to

the heightened pleading requirement of Rule 9(b)."  Warden, 288 F.3d at 105 (citing Rolo v. City

Investing Co. Liquidating Trust, 155 F.3d 644, 657 58 (3d Cir. 1998)).

The Third Circuit in Annulli v. Panikkar addressed the unique pleading nature of mail

and wire fraud:

> There are two elements of a mail or wire fraud charge: "(a) a scheme to defraud,
> and (2) a mailing or wire in furtherance of that scheme."  Greenberg v. Brewster,
> 816 F. Supp. 1039, 1049 (E.D. Pa. 1993).  Wholly intrastate use of the mails for
> fraud violates the mail fraud statute.  See, e.g., In re Burzynski, 989 F.2d 733, 742
> (5th Cir. 1993).  In contrast, the federal wire fraud statute requires interstate use

of the wire.  <u>See</u>, <u>e.g.</u>, <u>Smith v. Ayres</u>, 845 F.2d 1360, 1366 (5th Cir. 1988) ("As
several courts have recognized, the statute requires that the wire communication
cross state lines.").

200 F.3d 189, 200 n. 9 (3d Cir. 1999); <u>See</u> also <u>Zellner</u>, 2008 U.S. Dist. LEXIS 5776 at *22-23

(citing <u>Stanley v. Int'l Bhd. of Elec. Workers, AFL CIO CLC,</u> 207 Fed. Appx. 185, 189 (3d Cir.

2006)) (internal quotations omitted) ("[T]he wire fraud statute, 18 U.S.C. § 1343, 'criminalizes a

scheme to defraud that is transmitted by wire 'in interstate or foreign commerce'; thus, a

complaint must allege interstate use of the wire for each predicate act.").

Moreover, when asserting mail fraud allegations, a plaintiff must "identify the purpose of

the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the

time, place, and speaker and content of the alleged misrepresentations."  <u>Annulli</u>, 200 F.3d at

201 n. 10.  In other words, the plaintiff's pleading must contain the "who, what, when and where

details of the alleged fraud."  <u>Bonavitacola</u>, 87 Fed. Appx. at 231 (quoting <u>Allen Neurosurgical</u>

<u>Assoc., Inc. v. Lehigh Valley Health Network</u>, No. 99-4653, 2001 WL 41143 (E.D. Pa. Jan. 18,

2001)).

Accordingly, this Court will only consider as predicate racketeering acts those wire

frauds which have been alleged to have been transmitted by wire "in interstate or foreign

commerce" and those mail frauds that are alleged to have made use of the United States Postal

Service.  <u>See</u> <u>Zellner</u>, 2008 U.S. Dist. LEXIS 57769, at *23 ("As these . . . frauds were not

properly plead, the Court will not consider them as 'predicate acts.'").  Further, this Court will

only consider as predicate racketeering acts those mail and wire frauds alleged with the

specificity required by the heightened pleading standard of Rule 9(b).

Upon a liberal construction of Plaintiff's Complaint, Plaintiff misses his mark by a wide margin, failing to plead with the level of specificity required by Rule 9(b).  Plaintiff asserts a wide variety of conclusory allegations of fraud and racketeering against Defendants without factual support.  Plaintiff simply attacks Defendants through a mass of verbiage, devoid of any cognizable legal arguments.[9]  Plaintiff repeats his blanket allegations from his complaint that Defendants used Federal Mail System and interstate telephones to defraud him.  (Pl. Opp. ¶ 26). Plaintiff, however, does not allege a single instance in which Defendants used the interstate telephone system or the Federal Mail System, or the purpose behind Defendants' alleged "scheme."  It is impossible for this Court to discern the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation" of the communications between Defendants.  See Frederico, 507 F.3d at 200. Therefore, Plaintiff fails to properly plead a predicate act of mail or wire fraud.

### c. Plaintiff's Extortion Allegations

Plaintiff also alleges that Defendants engaged in a scheme to extort money from Plaintiff. Extortion is a sufficient predicate acts to show racketeering activity.  Genty, 937 F.2d at 907; See also 18 U.S.C. § 1961(1).  Unlike the heightened pleading standard for fraud allegations, allegations for extortion need only satisfy Rule 8's general notice-pleading standard.  Marjac, LLC v. Trenk, No. 06-1440, 2006 WL 3751395 (D.N.J. Dec. 19, 2006) (citing Rose v. Bartle, 871 F.2d 331, 362 n. 53 (3d Cir. 1989) (Rule 9(b) inapplicable because plaintiffs' claims of bribery and extortion do not allege fraud on part of defendants) (citing Chiropractic Alliance of New Jersey v. Parisi, 854 F.Supp. 299, 308 (D.N.J. 1994) ("the allegations of theft by extortion,

[9] Plaintiff alleges that Defendants have tried to "dirty" Plaintiff and distract the court by "using the black ink of the Octopus" to distract the Court from the true issues in the case. (Pl. Aff. ¶ 27-40).

17

for example, are properly governed by the more lenient pleading requirement of <u>Fed. R. Civ. P.</u> 8”).

Even if Plaintiff's extortion allegations constituted a predicate act, Plaintiff fails to allege a pattern of racketeering activities.  See <u>Zellner</u>, 2008 U.S. Dist. LEXIS 57769, at *20. Conclusory allegations of a pattern of racketeering activity . . . are insufficient to survive a Rule 12(b)(6) motion.  <u>Egnotovich v. Greenfield Twp. Sewer Authority,</u> 304 Fed. Appx. 94, 98 (3d. Cir. 2008) (citing <u>Lum</u>, 361 F.3d at 223).  The pattern must pose a threat of continued criminal activity.  See <u>Hollis-Arrington v. PHH Mortg. Corp.</u> 205 Fed. Appx. 48, 54 (3d Cir. 2006). Where the allegations of the complaint, taken as true, do not support the existence of long-term criminal conduct or the threat thereof, dismissal is appropriate.  <u>Marshall-Silver Constr. Co. v. Mendel</u>, 894 F.2d 593, 598 (3d Cir.1990).

Although Plaintiff alleges that Defendants are engaged in an ongoing scheme, the factual allegations of the Complaint are conclusory.  Plaintiff alleges that Defendants are attempting to extort over $25,000 from Plaintiff, yet provides no factual information, as required, as to how Defendants are engaging in this extortion.  See <u>Concepcion v. Resnik</u>, 143 Fed. Appx. 422, 426 (3d. Cir. 2005).  Plaintiff's conclusory allegations against Defendants do not support the existence of a long term criminal scheme by Defendants.  Thus, because Plaintiff is unable to allege a pattern of two or more racketeering activities that supports the evidence of long-term criminal conduct or the threat thereof, the Court dismisses Plaintiff's RICO claims.[10]

---

[10] Plaintiff is also required to plead an enterprise to prove a RICO violation, which requires Plaintiff to prove that (1) the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; (2) the members of the enterprise function as a continuing unit with established duties; and (3) the enterprise must be separate and apart from the pattern of activity in which it engages.  See <u>Seville Indus. Mach. Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 789-90 (3d Cir. 1984).  Because the Court finds that Plaintiff does not allege such an enterprise in this case, the Court need not address this issue.

### C. Additional Relief

Defendants, who have already defended against Plaintiff's claims in New York State

Court, move for sanctions under Rule 11.  Rule 11 allows for the imposition of sanctions against

an attorney for asserting frivolous, unreasonable, or unsupported claims.  Fed. R. Civ. P. 11(b).

It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is

one of reasonableness under the circumstances, the determination of which falls within the sound

discretion of the District Court.  Brubaker Kitchens Inc. v. Brown, 280 Fed. Appx. 174 (3d Cir.

2008) (citing Gary v. Braddock Cemetery, 517 F.3d 195, 201 n. 6 (3d Cir.2008)).  Pro se

litigants are not immune from sanctions, but courts may take into account plaintiff's pro se status

as someone who is untutored in deciding whether or not to impose sanctions.  See Unanue Casal

v. Unanue Casal 132 F.R.D. 146 (D.N.J. 1989); Niyogi v. Intersil Corp., No. 05-4685, 2006 WL

2570826, at *2 (D.N.J. Sept. 5, 2006) (citations omitted).

In addition, Rule 11 contains specific provisions requiring a party seeking sanctions to

notify his adversary of the possibility of such sanctions and the reasons for such a motion.

Martin v. Brown, 63 F. 3d 1252, 1264 (3d Cir. 1995); Simmerman v. Corino, 27 F.3d 58, 64 (3d

Cir. 1994) ("The party sought to be sanctioned is entitled to particularized notice including, at a

minimum, 1) the fact that Rule 11 sanctions are under consideration, 2) the reasons why

sanctions are under consideration, and 3) the form of sanctions under consideration.").

Here, Plaintiff manages to barely escape sanctions.  First, Briksza was well aware of the

possibility that sanctions that could be imposed if he further pursued the present litigation, and

was advised to withdraw his Complaint.  (Ex. I).  Second, Briksza was made aware that he could

be sanctioned because this matter had already been litigated in New York State Court, and that

the Court should consider sanctions because Briksza may have been seeking to circumvent that ruling.  Id.  However, although Plaintiff was warned repeatedly about the possibility of sanctions by Defendants, he was not warned regarding the form of sanctions that might be imposed. Because Plaintiff is a pro se litigant, he would therefore be unaware of the types of sanctions that could be imposed unless he was put on notice.  Thus, Defendants' request for Rule 11 sanctions against Plaintiff for bringing this action is denied at this time.

The Court cautions Plaintiff that should he file additional frivolous claims against Defendants in this Court, stemming from the "taking" of his alleged property from Theater,[11] I will not hesitate to impose sanctions, pursuant to this Court's inherent power to protect the courts from oppressive and frivolous litigation.  See 28 U.S.C. § 1651(a); Syed v. Hercules Inc. 184 F.Supp.2d 395 (D. Del. 2002);  Hollis Arrington v. PHH Mortg. Corp., No. 05-2556, 2005 WL 3077853, at *9 (D.N.J. Nov. 15, 2005), aff'd. in part, vacated in part, 205 Fed. Appx. 48 (3d Cir. 2006).

**III. Conclusion**

For the foregoing reasons, Plaintiff's claims are dismissed.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: June 19, 2009

---

[11] The Court notes that Plaintiff also had a partner, Adam Schapp, who had a business interest in Theater.  Mr. Schapp filed several actions in the New York State Court system also alleging damages from the loss of this very same property.  In fact, the complaint in this action and the complaints in the actions filed by Mr. Schapp are nearly identical to the documents filed by Plaintiff.  Wisely, Mr. Schapp has not joined in this present action.